Anderson, J.,
delivered the opinion of the court.
Benjamin Boisseau, jr., died seized of real estate, which descended to his infant daughters Mary and Rosa, his only heirs at law. Mary married the appellee, Ro IT. Jones, jr., and is living. Rosa intermarried with Stephen W. Britton, in the summer of 1862, after she attained the age of eighteen, and died in the summer or fall of 1864, under the age of twenty-one years, intestate, leaving an only child, who survived her but a short time.
*447 Before the maniage of Bosa and her sister their lands = . were sold, during their minority, by their guardian Benjamin B. Yaughan, the appellant, by proceedings chancery under chapters 124 & 128 of the Code. After the marriage of Bosa her guardian paid over to her husband, on the 13th of December 1862, fifteen thousand five hundred dollars, of which §11,419.62 cents were of the proceeds of her real estate, and took from him bond with security, conditioned to indemnify and save harmless the said guardian from all loss and damage that might in any way result from paying to the said Britton the proceeds of his ward’s real estate. And the questions now to be decided, are, first: Did the proceeds of the sale of Bosa’s real estate pass at her death to her infant child, who survived her, to whom the real estate would have descended if it had not been sold ? Or did they pass as personal estate to her husband, under the statute of distributions ? And 2d: If they passed to her infant child, did they pass as real estate to him, and at his death to his kindred on the mothei*’s side? Or did they lose, after that first devolution, the impress of real estate, and at the death of the child pass to his father as next of kin Ve will endeavor to pursue these inquiries briefly in their order.
It is an established principle of courts of equity, says judge Lomax, not to suffer the real estate of infants to be changed into personal, nor personal into real estate. Upon this principle the Legislature of this State has directed, in the sale of infants real estate under the authority of courts of chancery, that if the infant dies under twenty-one years, the proceeds of the sale shall be considered as real estate, and shall pass to such person as would have been entitled if it had not been sold. 1 Lomax Dig. top p. 239, marg. 202. This is substantially the purport of section 21 of chap. 108 of the *448 R. C. of 1819. The sale of infants real estate by the Supei’ior court of chancery,being authorized by previous of the act, what was the design of this 21st sec-^.-on j jj. geemg ^-0 been to guard against any change being made in the legal incidents and qualities attached to real estate, by the sale which had been authorized by the previous sections, both as it respects the rights and interests of the infant and of those to whom the real estate would descend in the event of his death intestate, under twenty-one years of age. And, therefore, it is provided, that the proceeds of the sale shall be considered as real estate, and at the death of the infant intestate, under twenty-one years of age, shall pass as real estate to those who would have been entitled to the land if it had not been sold. And the sale is only authoi’ized, as appears from a previous section, provided their rights should not be violated. And, without adopting the provision aforesaid in the twenty-first section, or the equitable principle of courts of chancery, a sale could not be made within that restriction. Those to whom the proceeds would pass under this section are designated by sections 11 and 12 of the statute of descents. 1 R. C. ch. 96.
It is evident that section 21 of chap. 108 was inserted to carry out the principle declared in a previous section, that the sale could only be made within the restriction that the rights of no person should be violated thereby, and also in accordance with the established principle of equity, not to suffer the real estate of an infant to be changed into personal, &e. Although no one can be the heir of a person living, yet the statute recognizes rights in all those who would be heirs of the infant, if he were dead, and expressly requires that they shall be made defendants to the suit for the sale of an infant’s real estate. And if it were any advantage to the infant that his *449 rights of pi’operty should be governed by the law of real estate, (and the advantage in many respects is undeniable,) a statute which was enacted to authorize a sale of his real estate, only for his benefit, could hardly be intended to deprive him of that advantage.
Taking a comprehensive view of all the provisions of the statute of the revisal of 1819 upon this subject, it is evident that whilst the Legislature designed to authorize courts of chancery to sell infants real estate, without which they had no authority to sell, it was at the same time its design that such sale should be made without affecting the infants rights incident to an ownership of real estate, and without violating the rights of those who would be entitled to the estate, if the infant were dead. It was evidently the design of the Legislature, in framing this statute, that neither the rights of the infant, as incident to his real estate, and the well established principles of equity in relation thereto, nor the rights of those who would be entitled to the estate, upon the death of the infant under twenty-one years of age, should be altei’ed by the sale of his real estate. Indeed, it would .not have been proper, if competent to the Legislature, to have authoiized a court to deprive the infant of a vested beneficial right incident to his ownership of real estate, he being incapable of assenting thereto, or which would have diverted, (the statute uses stronger language,), “violated” the rights of those who were entitled to the estate at the death of the infant under disability. Therefore, the Legislature, when it had provided in a proper case, for the sale of infants real estate, if the rights of no person will be violated thereby, inserted this 21st section, whereby a sale could be ordered within that restriction, by declaring that “ if the infant after such sale shall die intestate, under the age of twenty-one years,” the proceeds “shall be considered as real estate, and shall pass *450 accordin^ *s> as re£d esta^e) to such persou or persons as would have been entitled to the estate sold, if it not been sold.”
It was contended by the learned counsel for the appellant that the language, “ If the infant shall die intestate under the age of twenty-one years,” implies that the proceeds were considered personal estate, and might be disposed of by the infant by will, after he attained eighteen years of age; because the “ if” implies that it was an estate as to which he might have died testate. And as by the law an infant under the age of twenty-one years could not make a will of real estate, it is inferred that the Legislature regarded it as personal estate, of which an infant might make a will, after he attained eighteen years of age. How, if this reasoning passed through the minds of the legislators; if it was clear that in framing and enacting this statute, this distinction between real and personal estate, as to the testamentary power of disposition, was adverted to and was borne in. mind, and that the inference from the' language they employed, nowT insisted on, might have been drawn from it—in a word, that the Legislature intended this inference; then this mode of interpretation might justify the conclusion.’ But it is well known that the legislative will is not always grammatically expressed; and there is nothing to show that the distinction of law referred to, or the reasoning from which the conclusion is drawn, were present to the legislative mind, suggestingsuch conclusion or inference. "When such an inference as to the intention of the Legislature, from that mode of interpretation, is in conflict with its evident purpose, as clearly manifested by other provisions of the statute, it ought to be rejected.
Should such construction be adopted, the effect would be that an infant of eighteen years of age might, by her *451 will, pass that for which her real estate sold, to persons who would not have been entitled to the real estate, if it had not been sold; which is contrary to the intention of the Legislature, as shown by the 19th . section of this chapter, by which the court is only authorized to decree a sale, if it is of opinion that the rights of no persou will be violated thereby, and who is required to be made a party defendant by the 16th section ; that is, “ those who would he heirs to the estate if he (the infant) were dead.” It is also in conflict with what has been iegarded, both from the scope and tenor of the statute, and from analagous principles of equity, as the intention of the Legislature with respect to the infant, in authorizing the sale of his real estate, not thereby to alter his rights of inheritance, which would be done by giving him the power of testamentary disposition before he attained twenty-one years of age. For these and other reasons which might be assigned, we think the inference drawn from the wording and grammatical structure of the'sentence, that the Legislature considered the proceeds of the sale as personal property, and subject to testamentary disposition by the infant, after she attained eighteen years of age, is unwarranted, being in conflict with the evident intent of the Legislature, and not necessary to an intelligent reading of the sentence. The words “under twenty-one years of age,” are evidently used as qualifying what goes before. The Legislature intended that the rule should only apply where the infant died intestate, (and it is not repugnant to say if he die intestate, though by the law he could not make a will,) but as he might die intestate, after he attained full age, and it was not intended that in that case the rule should apply, the words “ under twenty-one years of age” were added as a limitation on the word intestate; and if the word intestate was unnecessary, because it could not be otherwise *452 than intestate under the law, the use of the term only expressed the conclusion of law. If it was unnecessary, may be rejected as surplusage, which we may rather do than reject .express and important provisions of the statute. Ve are of opinion, therefore, upon a fair construction of chapter 108 of the It. C. that the 21st section was designed to preclude any change in the rights of descent and succession by the sale of an infant’s real estate, in ease of his death during his minority, by giving to the proceeds of sale the impress of real estate; and that it was no purpose of the statute to alter the infant’s right of property, which he derived by gift, devise or descent from his ancestor, by investing a court of chancery with power to decree its sale, so as to enable him by an act testamentary, or otherwise, to defeat the rights of those who would be entitled to the estate by the statute of descents, at his death, under disability.
Such is our construction of the statute of 1819. Has the law been changed in this respect by the revisal of 1849 ? The important provisions prohibiting the sale, which would deprive those who would be entitled to the land, in the event of the infant’s death under age, and requiring that they should be made defendants to the suit for a sale, are retained in the revised statute, chap. 128 of the Code. There is a change of phraseology by section 12, so as to make it applicable to sales made of insane persons estates, as well as infants; and to gales made under chapter 124 for partition. And whilst there is an extended application of the rule, when the death intestate occurs after twenty-one years of age, the party continuing incapable of making a will, as in the casé of a married woman, there is no alteration of the rule itself. The omission of the words “shall be considered as real estate,” we do not think was intended to change the law, but were omitted by the revisors as surplusage, *453 agreeably to their plan and the instructions given them to abbreviate and condense ; for the language retained conveys the same meaning. This construction is supported by the decision of this court in Parramore v. Taylor, 11 Gratt. 220. That this is a sound construction may be more fully shown while we pursue the second inquiry, which is, Did the proceeds of the sale in this case pass as real estate from the infant mother to her child, and at his death to his kindred on his mother’s side ? Or, did it lose the impress of real estate when it devolved to her child, and at his death pass to his father as his next of kin ?
The precise question seems never to have been expressly decided in Virginia; and it has been decided in different ways in other States, according as the polity of those States, and their statutory provisions on this subject, or the views of the judges, may have differed. "We must then look to our own statute for its solution, with such help in its construction as we may derive from previous decisions of this court, and from the judicial construction of the statutes of our sister Sta:es,by their own courts, and from such analogies and illustrations as may be found in the principles and practice of courts of equity.
¥e have already shown that it passed as real estate from the mother to her infant child, by the express terms of the 21st section of chapter 108 of the R. C.; and we have assumed that in the revision of 1849, although there is some change in the phraseology of the 21st section, there was no intention to change the law. If so, the impress of real estate is given by the Code of 1849, and by the 12th section of chap. 128 it will pass accordingly; that is, as real estate. This section declares that “ it shall pass to those who would have been entitled to the land if it had not been so sold,” &c. If *454 Persona^ estate it would pass by tbe statute of descents and distributions to tbe • husband; if real, it would pass to her child, the heir. This 12th section provides that it-shall pass to the person who would have been entitled to land, if it had not been sold—to the heir. If it does not pass as real estate; if it is not real estate in the eye of the law, but is personal estate, to require it to pass t-o the heir and not to the husband, is to repeal that provision of the statute of descents and distributions which gives the wife’s personal estate at her death to her husband:
Was it intended to repeal this provision of the statute of descents and distributions? Or was it only designed to give the proceeds the impress of real estate, and as such to pass as directed by the statute of descents and distributions ? Upon the construction, that it has the impress of real estate, and passes accordingly, the 12th section is not in conflict with the general law, but in harmony with it. We do not think that the above section was intended to repeal the statute of descents and distributions in this particular; the force and operation of which it in fact recognizes, when it provides in effect, that the proceeds shall pass to those who would be entitled under it to the land, if it had not been so sold. And it follows, therefore, that the provision in the 12th section of the chapter in the Code is in efí'éet and substance the same that was made in the 21st section of the chapter in the Revised Code.
But it is contended that the qualifying clause, “or so much thereof as may remain,” implies that it was regarded as personal estate, because it imports liability to diminution, by being appropriated to the maintenance' and education of the infant; which could not be done if it was real estate. The same clause is found in section. 21 of the chapter in the revised Code; and yet in that. *455 section it is expressly declared, that the proceeds, or so much as remain,” shall be considered as real estate. This would seem sufficient to repel such an inference. But it may be added, that the qualification was necessary and proper, as the proceeds might have been invested in slaves, some of whom might die, or other personal property of destructible character; or if loaned, was liable to diminution by loss of security, without fault of guardian.
We conclude, therefore, that the proceeds of Rosa Boisseau’s real estate at her death, under the law, as it then stood in effect, and as it now stands, passed as real estate to her infant child. If it passed to the child as real estate, derived by descent from his mother, at his death, which occurred a few hours afterwards, it would seem to follow as a sequence, that it would pass to Ms kindred on the mother’s side, under the 9th section of the 123d chapter of the Code. If it did not retain the impress of real estate after her infant child became invested with it, as real estate, when did it lose the impress of real estate ?
We have reached this point in the case, that the proceeds of Rosa Boisseau’s lands, by her death, passed as real estate, to her infant child, who lived only a short time. The question still remains, did it retain its real character, during the short period of his life, and at his death pass as real estate to his aunt, Mary Eppes Jones, his mother’s sister, subject to his father’s life estate? Or did it, immediately after it vested in the child, by the death of his mother, lose its impress of real estate, and pass at the death of the child as personal estate to his father, to the exclusion of his mother’s kindred?
If Rosa Boisseau’s land had not been sold, it would unquestionably at her death have passed to her infant *456 child, and upon his death, to Mary Eppes Jones, her sister, subject to the life estate of her husband. She invested with the estate, impres-ed with this quality. g^e ]-,erself, by any act of hers,' during her minority, cou^cl 11 divest it of that quality. If it was not intended by the statute, by authorizing the sale by courts of chancery, to change, in this respect, the character of her inheritance, and to change its course of descent, the proceeds at her death would pass, as the land would have passed, to her infant child, and at the death of her infant child would pass to her sister, subject to the life estate of her husband : So that, in either case, the husband would have at least a life estate in the property. And at his death, would it be most proper that it should go to his kindred, or the kindred of his wife ? If the land had not been sold, after the death of the husband it would have passed by the general law, to his wife’s sister. Has that course of descent been changed by the statute, which authorized the sale for the benefit of the infant, only, in a way not to impair the rights of those who would have been entitled to it in the event of her death intestate, she continuing incapable of making a will ?
It is a mistake to say that there has been no judicial construction of this statute, by this court. In Faulkner & als. v. Davis & als., 18 Gratt. 651, it was held, J. Mon-cure delivering the opinion of the court, that this statute was eminently remedial, and should receive a favorable construction, so as to advance the remedy and support the policy of the Legislature. And it was held, that the only effect of the decree which was relied on in that case, as a muniment of title, and Avhich was made under chapter 128 of the Code of 1849, “was to convert the real estate into money, and to leave the money or property in AAdiich it might be invested, in place of the *457 real estate sold, subject precisely to the same rights and interests, present or future, vested or contingent, to which the estate was subject at the time of the sale.” If this be so it would seem to be decisive of this case—for the proceeds would now be subject to the same rights and interests of Mary E. Jones, which at the time of the sale, she had contingently to the land. And this construction of the statute is agreeable to natural justice ; that the proceeds of real estate derived by the wife, should, after her death, under age or other disability, be enjoyed by the husband during his life, and at his death, pass to the kindred of the wife, in preference to the kindred of the husbaud. Such is the effect of the statute of descents and distributions, which we think was not' intended to be changed by the sale of an infant’s real estate.
Indeed, if the 12th section of our statute were omitted, it might be maintained, with much reason, that the proceeds of sale should, upon equitable principles, receive the impress of real estate, and pass in succession upon the death of the infant, as real estate, to those who would have been entitled to it if it had not been sold. And so it has been held in New York, in Forman v. Marsh, 11 New York Rep. 544; and in Horton & al. v. McCoy, 47 N. York R. 21; and also in New Jersey in Oberle v. Lerch, 346, in the Court of Chancery, and Lerch v. Oberle, 3, C. E. Green, 575, in the Court of Errors & Appeals. The New York statute for the sale of infants real estate, gives to the proceeds the impress of real estate, and passes them in succession to those to whom the real estate would have descended, if it had not been sold;. as our Virginia statute does in effect. But there is no provision in 'the New York statute, as in ours, limiting that course -oís uccession as real estate, to the death of the infant under-disability to make a will. In Forman v. Marsh, Edwards, J., held, that if *458 the statute had not given the character and impress of realty to the proceeds of sale, it would have been given the application of equitable principles'; and that upon those principles, “ as soon as the property was received ^ the person who alone was interested in it, after he became of full age, and was competent to receive it,” and not before, it would lose the impress of realty. In the same case, Kuggles, J., said, the duration- of this artificial character is not limited by any express terms of the clause which creates it. If that clause is to be literally construed, the personal fund must retain the character of real estate as long as it exists. The statute does not declare that its character may he changed by the act or election of its owner, after he arrives at full age. The question is, when shall the proceeds of the sale cease to possess the artificial character of real estate ? The true answer to the question is, he says, “as soon as the purposes of the.statute, in impressing upon them that character, are accomplished. And this is when the infant becomes capable of disposing of his own property.” The New York statute for partition, makes no provision, giv ing the impress of real estate to the proceeds of the sale of an infant’s real estate, when a sale is necessary to par. tition. In the above case of Horton & al. v. McCoy, it was held, Church, C. J., delivering the opinion of the whole court, that upon equitable principles the proceeds of the sale of the infant’s real estate in that case, were impressed with the character of real estate, and should pass in succession as real estate, although the statute was silent and made no such provision. And in Oberle v. Lerch (supra) the chancellor revie.ws the cases upon the subject, in a well considered opinion; and reaffirms the decision of the Court of Errors of the same State, in Hall v. Snowhill, 2 Green’s C. R. 820. In that case the *459 lands of an infant had been sold by virtue of a special act of tbe Legislature. The act authorized the sale, and directed the proceeds to be invested, and one-third of the interest to be for the mother of the infant, and two-thirds for the'use of the infant; and gave no directions as to the principal. The infant died without issue, under twenty-one years of age; and it was held that the proceeds passed as real estate to the heir at law of the infant. It will be perceived that the statute authorizing the sale was altogether silent as to the impress and character of the proceeds and their course of succession. Oberle & Lerch was, as to the right of succession to the surplus cf the proceeds, of the sale of infants real estate for the purpose of paying debts; whether such surplus shall be considered as real estate or as personal estate, for the purposes of succession. The chancellor says that there is nothing in the statute, by which the sale is authorized, to settle the question. But he holds that the principles upon which the doctrine of equitable conversion is now well established, are applicable, and that this theoretical conversion is considered in equity to continue until the ownership vests in some person who has the right to convert it from one kind to the other, and who, when of legal capacity, accepts it, or does something to recognize it, or give it character. “ Until this is done, it must retain the character of real or personal impressed upon it, by the last absolute owner, who had such power over it.” Again: “An-infant or lunatic cannot elect, and therefore canno** change the character impressed upon the property.” But it must retain the character impressed upon it by the last absolute owner, until that character is changed by some one having like power over it. And it was held in that ease, that the surplus passed to the heir, as real estate, and not to the personal repre *460 sentative. And this decision was affirmed by the Court of Errors and Appeal, and seems to be supported by the weight of authority. The case cited from Massachusetts, of Emerson v. Cutler, is contra. It was held, C. J. Shaw delivering the opinion, that the overplus of the proceeds of the land of an infant, sold by license of the court for the benefit of the infant, at her death under age, was personal estate, and passed to her administrator. The Chancellor of New Jersey, in the case {supra) reviewing this opinion, says: “ This case differs somewhat from that under consideration; as in it, the land was sold for the very purpose of converting it into personalty, for the benefit of the infant. It was not a dispute as to a surplus above the purpose for which the land was sold.” There seems to be ground for this distinction. But C. J. Shaw does not put it on that ground. And the ground upon which he puts the decision of the court, is directly in conflict with the Virginia statute. He says the court are of opinion that the husband is entitled to the distributive share of his deceased wife, in the estate sold by her guardian under a license of the court. We have no such statute. Our statute expressly declares that the proceeds shall pass to such persons as would have been entitled to the land if it had not been sold. He says, the real estate of the minor is alienated.” “ His title is effectually divested. He acquired a sum of money as an equivalent.” All that is true. “The title to his money, which is personal property, “he says,” is vested in him. On his death the property to be distributed is personal; aud the law governing the distribution of personal property must apply to it, without regard to the source whence it was derived.” It is sufficient to reply, our statute is expressly to the contrary. But O.' J. Shaw, in the case cited, denies the applicability of the doc *461 trines of equity to cases of this kind. His opinions are always entitled to very great respect. But there are opposed to him the well considered decisions we have noticed, and, in addition, the opinions of Ruffin, of 1ST. Carolina, and Gibson of Pennsylvania, names equally illustrious, and whose opinions would command equal respect in any enlightened tribunal of justice.
In Pennsylvania the decisions conflict. On one side is the name of C. J. Tilghman, and on the other of C. J. Gibson. But it would protract this opinion, already too prolix, to attempt any farther review of the cases cited. If we have. correctly understood our statute as passing the proceeds, as real estate, to those who -would have been entitled to the estate if it had not been sold, the infant child of Rosa derived the estate from his mother by descent. It vested in him as real estate. And upon his death under age, without issue, entitled to this property as real estate, in the eye of the law, by the 9th section of the statute of descents and distributions, it passed to his kindred on the side of the mother. This conclusion is in agreement with the views which we have long entertained, as to the effect and operation of this statute; and the only difficulty we have encountered in this investigation, in maintaining the correctness of that construction, is the very ingenious and able argument of the learned' counsel for the appellant. But, upon the whole, the conclusion which we have reached, we think is sustained by the best construction we can give to the Virginia statutes, aided by the decisions of this court, and by the best approved decisions of other States, and by analagous principles of equity. We are of opinion, therefore, that the proceeds of the real estate of Rosa Boisseau, which was sold during her minority, passed at her death, as real estate, to her infant child, *462 subject to the life estate of her husband by the curtesy; and that at the death of the infant child, the impress of estate never having been removed from them, they passed as real estate to Mary E. Jones, wife of the appehee, and sister of the said Eosa, subject to the life estate of S. W. Britton-, the husband.
But, we think there is error in the decree, requiring the appellant to pay the sum of $11,419.62 cents, unconditionally to the receiver of the court, which lie had paid to the husband of his ward, wdio in any view of the case is entitled to the use of it, during his life. The most that could have been done, was to require bond to be given with additional security, if the security was insufficient, conditioned for the payment of the money to Mary E. Jones, at the death of said Stephen W. Brit-ton, reserving to the appellees the privilege at any time, if the fund should he deemed insecure, of moving for additional security; and upon the failure of the appellant to give such bond, with additional security, in a specified time, which should be reasonable, that he should pay the said sum of $11,419.62 cents, to the receiver of the court,subject to its control, who should be authorized to sue out a writ of execution, if necessary, to enforce the decree. It is true that appellant, in his answer, objected to give additional security, declaring that he was unwilling to ask any one to go his security. But that declaration in his answer, did not preclude him from giving security, after the court determined that he should do so, or pay the money.
We are of opinion, therefore, that for this cause alone, the decree must be reversed; and in all other respects affirmed; and that the cause be remanded to the Circuit *463 court of the city of Petersburg, for further proceedings to be had therein, in conformity with the principles herein declared.
Decree reversed.